Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Job Connection Center Inc.<br><br>Recurrido<br><br>v.<br><br>Supermercados Econo Inc.<br><br>Peticionario<br><br>Departamento de la Familia<br><br>Tercero Demandado | Certiorari<br><br>2012 TSPR 85<br><br>185 DPR ____ |

Número del Caso: CC-2011-740

Fecha: 14 de mayo de 2012

Tribunal de Apelaciones:

      Región Judicial de Arecibo

Abogado de la Parte Peticionaria:

      Lcdo. Jaime Brugueras

Abogado de la Parte Recurrida:

      Lcdo. Héctor Pérez Rivera

Materia: Procedimiento Civil – Regla 52.1 de las Reglas de Procedimiento Civil de 2009; revisión de decisiones interlocutorias

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Job Connection Center Inc.

    Recurrido

            v.

                                    CC-2011-740    Certiorari

Supermercados Econo Inc.

    Peticionario

Departamento de la Familia

    Tercero demandado

Opinión del Tribunal emitida por el Juez Asociado SEÑOR ESTRELLA MARTÍNEZ

San Juan, Puerto Rico, a 14 de mayo de 2012.

El caso ante nuestra consideración nos brinda la oportunidad de expresarnos en torno a un asunto de gran importancia e interés, tanto para los miembros de la profesión de la abogacía como para la comunidad en general. Debemos resolver si una determinación del Tribunal de Primera Instancia en cuanto a la descalificación de un abogado podría ser revisada de forma interlocutoria por el Tribunal de Apelaciones mediante un recurso de *certiorari*. En específico, debemos dilucidar si las órdenes de descalificación están contenidas entre las excepciones que confieren jurisdicción al

Tribunal de Apelaciones para revisar órdenes o resoluciones interlocutorias bajo la Regla 52.1 de las Reglas de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. R. 52.1.

I

El origen del caso ante nos surge de una controversia sobre un alegado incumplimiento de contrato y cobro de dinero. El 7 de abril de 2007 la compañía Job Connection Center, Inc. (Job Connection) presentó una demanda contra Supermercados Econo, Inc. (Econo). Alegó que mediante el contrato realizado entre Econo y Job Connection, esta última se obligó a adiestrar personal y asistir en la implantación de un programa federal de subsidios de salarios. Arguyó que de conformidad con el anterior contrato, el peticionario le adeudaba $161,208.97 por servicios prestados, mora e intereses legales, ya que se comprometió a desembolsar cualquier gasto relacionado a la capacitación de los empleados según se describía en una propuesta entre Econo y el Departamento de la Familia.

Econo presentó su contestación a la demanda, una reconvención y una demanda contra tercero contra el Departamento de la Familia.[1] El bufete de abogados Muñoz, Boneta, Benítez, Peral & Brugueras (Munet Law) compareció en representación de Econo en este litigio.

Luego de varios trámites procesales, el 15 de octubre de 2008 Job Connection presentó una *Moción en solicitud de*

---

[1] Alegó que debido al incumplimiento contractual de Job Connection no había podido recibir de parte del Departamento de la Familia el reembolso de los salarios que Econo había pagado a los empleados bajo el plan de subsidios.

*descalificación de abogados, y paralización de los procedimientos*. Sostuvo que procedía la descalificación del bufete Munet Law debido a que existía un conflicto de intereses entre Econo y uno de los socios del bufete, el Lcdo. Rogelio Muñoz Vissepó, y que este conflicto le era imputable a todo el bufete. Job Connection arguyó que el licenciado Muñoz Vissepó no podía representar con lealtad los intereses de Econo ya que era socio de Munet Law y, a su vez, miembro de la Junta de Directores de Econo. Sostuvo que esta situación configuraba una violación al Canon 21 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, el cual prohíbe que un abogado represente a una parte cuando su juicio profesional pueda quedar afectado por sus intereses personales.

La solicitud de descalificación presentada por Job Connection también estuvo basada en que se proponía tomarle una deposición al licenciado Muñoz Vissepó y que por ello se convertiría en testigo. Arguyó que esto configuraba una violación al Canon 22 del Código de Ética Profesional el cual prohíbe que un abogado sea testigo en el mismo caso en el que comparece como representante legal de una parte. Así también, sostuvo que el no ordenar la descalificación podría afectar el descubrimiento de prueba. Por último, Job Connection señaló que existía una posible violación al Canon 38 según el cual un abogado tiene que evitar hasta la apariencia de conducta impropia. En síntesis, Job Connection alegó que los Cánones 21, 22 y 38 del Código de Ética Profesional le impedían a Munet Law ejercer la

representación legal de Econo. Además, solicitó la paralización de los procedimientos judiciales hasta que se dilucidara la moción.

El 21 de noviembre de 2008, Econo presentó una *Moción en oposición a la solicitud de orden, replica a la moción en oposición a presentación de reconvención y oposición a moción de descalificación.* Alegó que el bufete Munet Law se compone de dieciséis (16) abogados, uno de los cuales es el licenciado Muñoz Vissepó, quien sostiene una práctica exclusivamente corporativa, que nunca ha comparecido en el caso de epígrafe y que solo ha sido partícipe de informes periódicos. Expresó que, sin embargo, el licenciado Muñoz Vissepó estaría disponible para cualquier asunto que requiera el demandante, siempre que el derecho procesal civil y el derecho probatorio lo permitiesen.

Econo alegó que Job Connection carecía de legitimación activa para hacer el planteamiento de descalificación ya que no demostró que le causaría un perjuicio o desventaja indebida en el caso. Además, sostuvo que la moción de descalificación solo pretendía dilatar los procedimientos y privar a Econo de su representación legal.

El 21 de enero de 2009, Econo presentó una moción en la cual solicitó una orden protectora relacionada a la anunciada deposición. Alegó que no existía justificación para la solicitud de toma de deposición.

Job Connection presentó una moción en cumplimiento de orden el 6 de febrero de 2009 en la cual se opuso a la solicitud de orden protectora presentada por Econo. Reiteró

su postura acerca de la imposibilidad de que Munet Law y el licenciado Muñoz Vissepó continuaran representando legalmente a Econo debido al alegado conflicto de intereses que había entre Econo y su representante. Además, expresó que el licenciado Muñoz Vissepó sería depuesto por su conocimiento sobre hechos en controversia. Ese mismo día, Job Connection notificó la toma de una deposición al licenciado Muñoz Vissepó.

Econo presentó una réplica a la moción en cumplimiento de orden en la cual expresó que era necesario analizar la capacidad de la intervención del licenciado Muñoz Vissepó para poder discernir si Job Connection tenía derecho o no a la deposición solicitada. Arguyó que debía determinarse si la información que se busca descubrir podría ser obtenida de otras personas o medios menos onerosos y complejos de acuerdo con lo resuelto en Ades v. Zalman, 115 D.P.R. 514, 530 (1984). Esto, debido a que la intervención y participación del licenciado Muñoz Vissepó en las reuniones de la Junta de Directores de Econo había sido en carácter de abogado-director y que la información podía ser suministrada por las personas que participaron en la negociación de ambos contratos.

Econo sostuvo que no procedía la solicitud de descalificación. Además, solicitó que el tribunal dictara "no ha lugar" a la petición de deposición presentada por la parte recurrida y que concediera la orden protectora solicitada. Arguyó que no hay ninguna incompatibilidad de

funciones entre ser abogado de una corporación y servir de director externo de su Junta de Directores.

Según surge del expediente, el 3 de abril de 2009 el Tribunal de Primera Instancia celebró una vista sobre el estado de los procedimientos. En ésta, Job Connection reiteró su solicitud de descalificación. El foro primario le concedió un término a Econo para que presentara su posición. Econo cumplió con lo ordenado mediante una moción en la cual reiteró su solicitud de orden protectora y su petición de que el tribunal declarara "no ha lugar" la descalificación solicitada. Se anejó a la moción en cumplimiento de orden una declaración jurada en la cual el licenciado Muñoz Vissepó expresó que su participación en la Junta de Directores de la empresa era como director externo y como abogado de la empresa. Declaró además que su función consistía en asesorar y que no era accionista, ni poseía participación o interés propietario en la corporación de Econo.

El Tribunal de Primera Instancia notificó una resolución el 7 de octubre de 2010 en la cual declaró "ha lugar" la moción de descalificación presentada por Job Connection. En consecuencia, ordenó la descalificación del licenciado Muñoz Vissepó y Munet Law como representantes legales de Econo en el litigio. El foro primario basó su dictamen en que, al licenciado Muñoz Vissepó ser un potencial testigo y pertenecer al bufete que representa a Econo, podría afectar el descubrimiento de prueba y dar la apariencia de conducta impropia.

Inconforme, el 8 de noviembre de 2010 Econo presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. En éste señaló que el Tribunal de Primera Instancia erró al descalificar al licenciado Muñoz Vissepó y al bufete Munet Law. Por su parte, Job Connection se opuso a la expedición del recurso mediante una moción. Arguyó que las mociones de descalificación no se encuentran entre las excepciones que la Regla 52.1, *supra*, confiere para que el Tribunal de Apelaciones revise determinaciones interlocutorias del Tribunal de Primera Instancia.

El 23 de junio de 2011, el Tribunal de Apelaciones denegó el recurso de *certiorari*. Concluyó que una moción de descalificación no está comprendida dentro de los escenarios que confieren jurisdicción al Tribunal de Apelaciones para revisar órdenes y resoluciones interlocutorias bajo la Regla 52.1 de Procedimiento Civil, *supra*. Además, sostuvo que de todas formas hubiese denegado el recurso. Esto, por considerar que los tribunales de instancia están en mejor posición para determinar cuál debe ser el manejo de los casos de descalificación de abogados.

Luego de varios trámites procesales, el 12 de septiembre de 2011 Econo acudió ante nos mediante un recurso de *certiorari*. Nos solicita que revoquemos la resolución recurrida y que nos expresemos acerca de la jurisdicción del Tribunal de Apelaciones bajo la Regla 52.1 de Procedimiento Civil, *supra*, para revisar interlocutoriamente las determinaciones del Tribunal de Primera Instancia en cuanto a una solicitud de

descalificación de abogado. Presentó además una moción en auxilio de jurisdicción el 13 de septiembre de 2011 en la cual nos solicitó que paralizáramos los procedimientos mientras se revisaba la resolución dictada por el Tribunal de Apelaciones.

El 19 de septiembre de 2011, emitimos una resolución mediante la cual paralizamos los procedimientos y expedimos el auto de *certiorari*. El 9 de diciembre de 2011, le concedimos un término a Job Connection para que presentara su alegato. Con la comparecencia de ambas partes, estamos en posición de resolver.

II

A.

Bajo las derogadas Reglas de Procedimiento Civil de 1979, el Tribunal de Apelaciones podía atender mediante *certiorari* todas las determinaciones interlocutorias del Tribunal de Primera Instancia.[2] Al aprobarse las nuevas Reglas de Procedimiento Civil de 2009, se dispuso en la Regla 52.1 una prohibición general a que el Tribunal de Apelaciones revisara mediante auto de *certiorari* las resoluciones u órdenes interlocutorias. La propia regla estableció las circunstancias excepcionales en las que el foro apelativo intermedio tendría jurisdicción para atender mediante recurso de *certiorari* determinaciones interlocutorias del Tribunal de Primera Instancia. Las excepciones dispuestas en la referida regla fueron las

_____

[2]Regla 52.1 de Procedimiento Civil de 1979, 32 L.P.R.A. Ap. III, R. 52.1.

siguientes: cuando se recurriera de una resolución u orden bajo las reglas sobre remedios provisionales e *injuctions*, Reglas 56 y 57 de las Reglas de Procedimiento Civil de 2009, 32 L.P.R.A. Ap. V. R.56 y 57, o de la denegatoria de una moción de carácter dispositivo.

Además, la mencionada Regla 52.1, *supra*, dispuso una lista de situaciones en las cuales el Tribunal de Apelaciones puede revisar órdenes o resoluciones interlocutorias como excepción. Esta lista taxativa estableció como excepciones las siguientes circunstancias: cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía y en casos de relaciones de familia.[3]

De esta manera, se limitó la revisión de resoluciones y órdenes interlocutorias. Este cambio fue motivado principalmente por el gran cúmulo de recursos para revisar órdenes y resoluciones que dilataban innecesariamente el proceso; éstas podrían ser revisadas una vez culminado el asunto en instancia, uniendo esa revisión al recurso de apelación. Las enmiendas a la regla fueron realizadas con el fin de agilizar los procedimientos y evitar que se paralizaran los casos por tiempo considerable de manera innecesaria. Informe de la Comisión de lo Jurídico Civil del Senado de Puerto Rico sobre P. de la C. 2991, 11 de noviembre de 2010, pág. 2. Estas limitaciones buscaron

---

[3]Estas excepciones fueron incluidas durante el trámite legislativo para resaltar otras circunstancias en las cuales está disponible el recurso de *certiorari*.

"restaurarle al *certiorari* su característica de remedio extraordinario y especial". J. A. Cuevas Segarra, Tratado de Derecho Procesal Civil, 2da ed., Ed. Publicaciones JTS, 2011, T. IV, pág. 1503.

Sin embargo, la regla no vislumbraba la posibilidad de que en situaciones excepcionales se permitiese la intervención interlocutoria del foro apelativo intermedio. Con el fin de disponer acerca de la revisión en estas situaciones excepcionales, la Ley Núm. 177-2010, 32 L.P.R.A. Ap. V., enmendó la referida Regla 52.1, para permitir que el Tribunal de Apelaciones pueda atender mediante *certiorari* determinaciones interlocutorias del Tribunal de Primera Instancia en casos que estén revestidos de interés público o en situaciones en que esperar a la apelación constituiría un fracaso irremediable de la justicia. Así, la Regla 52.1 de las Reglas de Procedimiento Civil de 2009, según enmendada, dispone lo siguiente:

> Todo procedimiento de apelación, *certiorari*, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
>
> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de

> rebeldía, en casos de relaciones de familia, **en
> casos que revistan interés público o en cualquier
> otra situación en la cual esperar a la apelación
> constituiría un fracaso irremediable de la
> justicia.** Al denegar la expedición de un recurso
> de *certiorari* en estos casos, el Tribunal de
> Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden
> interlocutoria expedida por el Tribunal de
> Primera Instancia podrá ser revisada en el
> recurso de apelación que se interponga contra la
> sentencia sujeto a lo dispuesto en la Regla 50
> sobre los errores no perjudiciales. (Énfasis
> suplido).

La enmienda a la Regla 52.1 permite que, aun manteniendo su propósito original, se logre acceso a una revisión en situaciones que lo ameriten, ya sea debido a situaciones que conllevan un interés público apremiante o en las cuales el esperar a la posible interposición de una apelación podría conllevar un fracaso irremediable a la justicia. De esta forma se asegura la disponibilidad del recurso cuando existen situaciones meritorias.

B.

La Regla 9.3 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. V, R. 9.3, establece que un tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los miembros de la profesión legal que postulan ante sí, puede descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. Así, el Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello abone a la adecuada marcha de un litigio y sea necesario para la solución justa,

rápida y económica de los pleitos. Meléndez v. Caribbean Int'l. News, 151 D.P.R. 649, 661 (2000).

Una orden de descalificación puede proceder ya sea para prevenir una violación a cualquiera de los Cánones de Ética Profesional o para evitar actos disruptivos de los abogados durante el trámite de un pleito. Íd. Ello no menoscaba el poder inherente de esta Curia para ejercer la facultad de disciplinar a los miembros de la clase togada. Íd. Esto es así ya que los procedimientos de descalificación no constituyen acciones disciplinarias de por sí. K-Mart Corp. v. Walgreens of P.R., Inc., *supra*, pág. 638. Sin embargo, en muchas ocasiones las descalificaciones funcionan como una medida para evitar posibles violaciones a los Cánones del Código de Ética Profesional. Íd., pág. 637. Ahora bien, si los mismos hechos por los cuales se ordena la descalificación podrían ser suficientes para disciplinar éticamente al abogado, entonces la acción disciplinaria procedería.

En los procedimientos disciplinarios por violación a los Cánones de Ética Profesional el abogado se expone a una sanción o penalidad. Aunque en el caso de una descalificación no se expone a esto, la realidad es que la descalificación de un abogado afecta negativamente varios aspectos, tales como los derechos de las partes y el trámite de los procedimientos. En consideración a lo anterior, una descalificación es un remedio que no debe imponerse ligeramente. Ésta solo debe proceder cuando sea estrictamente necesario, por considerarse un remedio

drástico que debe ser evitado si existen medidas menos onerosas que aseguren la integridad del proceso judicial y trato justo a las partes. El tribunal deberá realizar un balance entre el efecto adverso que la representación legal pueda tener sobre los derechos de las partes a un juicio justo e imparcial, y en el sistema judicial.

Una descalificación puede ser ordenada por el tribunal *motu proprio* o a solicitud de una parte. Meléndez v. Caribbean Int'l. News, *supra*, pág. 661; K-Mart Corp. v. Walgreens of P.R., Inc., *supra*. Cuando es el tribunal el que dicta *motu proprio* la descalificación, no es necesario que aporte prueba sobre una violación ética, ya que la apariencia de impropiedad podrá ser utilizada, en caso de duda, a favor de la descalificación. Meléndez v. Caribbean Int'l. News, *supra*, pág. 661; Liquilux Gas Corp. v. Berríos, Zaragoza, 138 D.P.R. 850, 864 (1995); *In re* Carreras Rovira y Suárez Zayas, 115 D.P.R. 778, 792 (1984). Tampoco se requiere aportar prueba de una violación ética cuando la descalificación responde a la necesidad de un juez de agilizar el trámite de un pleito. Meléndez v. Caribbean Int'l. News, *supra*. En cambio, cuando es una parte quien solicita la descalificación de un representante legal, la mera presentación de una moción de descalificación no conlleva automáticamente la concesión de la petición en cuestión. El tribunal deberá hacer un análisis de la totalidad de las circunstancias a la luz de los siguientes factores: (i) si quien solicita la descalificación tiene legitimación activa para invocarla;

(ii) la gravedad de la posible violación ética involucrada; (iii) la complejidad del derecho o los hechos pertinentes a la controversia y el "expertise" de los abogados implicados; (iv) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (v) el propósito detrás de la descalificación, es decir, si la moción está siendo utilizada como mecanismo para dilatar los procedimientos. Otaño v. Vélez, 141 D.P.R. 820, 828 (1996) (*Per Curiam*); Liquilux Gas Corp. v. Berríos, Zaragoza, *supra*, pág. 865.[4] Respecto a este último requisito, este Tribunal ha expresado que un juez puede denegar una solicitud de descalificación presentada por una parte adversa cuando entienda que ésta se ha interpuesto como una táctica dilatoria del procedimiento. Meléndez v. Caribbean Int'l. News, *supra*, pág. 661. Otra situación en la cual la solicitud es considerada frívola y debe ser denegada es cuando se presenta a los únicos fines de intimidar al adversario. M. A. Velázquez Rivera, Procedimiento Civil, 67 Rev. Jur. U.P.R. 775, 779 (1998).

---

[4]El juez debe analizar si una moción de descalificación se utiliza como una táctica dilatoria. C. W. Wolfram, Modern Legal Ethics, Sec. 7.1.3, págs. 316-17. Wolfram señala que existe una incidencia de casos en los que las partes utilizan la descalificación como un método dilatorio o un mecanismo para ganar ventaja. Según el autor, a mediados de la década del setenta hubo un crecimiento exponencial en el número de mociones de descalificación que se presentaban en los estados. C. W. Wolfram, op. cit., pág. 336. Muchas de estas mociones se presentaban para afectar al oponente y privarle de los servicios de un abogado conocido por su buena labor, y no para proteger los intereses de confidencialidad o lealtad.

El juez que atiende una moción de descalificación debe analizar si la continuación de la representación legal le causaría un perjuicio o desventaja indebida en el caso a quien la solicita. Antes de determinar si procede la descalificación requerida, el tribunal le deberá brindar la oportunidad al representante legal, cuya descalificación está siendo solicitada, para que se exprese. A esos efectos, en Otaño v. Vélez, *supra*, resolvimos que cuando una parte adversa interpone una moción de descalificación, el abogado contra el cual se presenta esta moción tiene derecho a ser oído y a presentar prueba en su defensa, antes de que el tribunal resuelva la solicitud. Otaño v. Vélez, Íd. Este derecho cumple con las exigencias del debido proceso de ley. Meléndez v. Caribbean Int'l. News, *supra,* pág. 670. En los casos en los cuales el tribunal ordena *motu proprio* la descalificación, la extensión de este derecho a ser oído se cumple al darle la oportunidad al abogado de reaccionar cuando el juez manifiesta las razones por las que procedería la descalificación. Íd.

El reconocimiento de este derecho demuestra la importancia de un proceso de descalificación para un abogado. Debido a las repercusiones que puede conllevar una descalificación, los abogados deben tener la oportunidad, bajo las exigencias del debido proceso de ley, de demostrar la posible improcedencia de ésta.

III

Luego de haber enunciado la naturaleza, propósitos y procedencia de las determinaciones acerca de

descalificaciones de abogados, estamos en posición de decidir si las órdenes de descalificación emitidas por el foro primario son revisables de forma interlocutoria mediante recurso de *certiorari*.

Los dictámenes en los cuales se ordena la descalificación de un abogado conllevan repercusiones que tienen el efecto potencial de afectar los derechos de las partes y el trámite de los procedimientos. La naturaleza de las solicitudes y órdenes de descalificación hace necesaria que en su determinación se salvaguarden los derechos de todas las partes, a la vez que sea realizada conforme con la Regla 1 de Procedimiento Civil "de modo que faciliten el acceso a los tribunales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica de todo procedimiento". Regla 1 de Procedimiento Civil de 2009, *supra*.

Cuando se ordena una descalificación, la parte cuyo abogado es descalificado debe buscar una nueva representación legal para la continuación de los procedimientos. El efecto de esto es un retraso en la ventilación del caso y en muchas ocasiones representa una carga económica mayor al conllevar desembolsos adicionales de dinero.

Además, una descalificación priva a la parte cuya representación legal fue descalificada de ser representada por el miembro de la clase togada de su elección, afectando así su derecho a la libre selección de abogado. C.W. Wolfram, Modern Legal Ethics, sec. 7.1.3, pág. 318. Aunque

en casos civiles el derecho a la libre selección de representación legal no es un derecho fundamental, sí es un derecho que no debe ser afectado si no existe real justificación para ello. Véanse, Meléndez v. Caribbean Int'l. News, *supra*; Otaño v. Vélez, *supra*; Sánchez Acevedo v. E.L.A., 125 D.P.R. 432, 438 (1990); *In re* Vélez, 103 D.P.R. 590, 599 (1975) (*Per Curiam*).[5]

A su vez, los procedimientos y resultados del pleito podrían ser afectados. Un abogado que lleve un tiempo considerable trabajando en un caso se ha preparado para el mismo y tiene un conocimiento sobre éste. El reemplazar al representante legal podría tener un efecto perjudicial en la forma en que se maneje el caso.

Por otra parte, es importante considerar los derechos del representante legal que ha sido descalificado. La proscripción de permanecer como representante legal conlleva, en muchas ocasiones, consecuencias nefastas para la profesión y la buena reputación del representante legal o bufete descalificado. Aunque, como mencionamos, la descalificación de un representante legal no constituye una acción disciplinaria, las mociones de descalificación en los procedimientos judiciales conllevan algunas consecuencias similares a la de los procedimientos

---

[5]En el caso de los procedimientos penales, el derecho a tener representación legal se ha consagrado como parte fundamental de la cláusula del debido proceso de ley. Enmda. VII, Const. EE. UU., L.P.R.A., Tomo 1, Art. II, Sec. 11, Const. P.R., L.P.R.A., Tomo 1. Véanse: Gideon v. Wainwright, 372 U.S. 335 (1963); Ramos Acevedo v. Tribunal Superior, 133 D.P.R. 599, 609 (1993); Pueblo v. Moreno González, 115 D.P.R. 298, 305 (1984); Pueblo v. Gordon, 113 D.P.R. 106, 108 (1982).

disciplinarios. Véase C. W. Wolfram; op. cit., pág. 331, nota 4. Por esta razón, si la descalificación es improcedente, el representante legal y, más importante aun, la parte afectada, debe contar con el derecho de revisar la misma y no tener que quedarse atado de brazos y desprovisto de una revisión.

Las situaciones anteriores se agravan al tener presente que el no reconocerle el derecho a revisar interlocutoriamente las resoluciones acerca de descalificaciones podría conllevar el pernicioso efecto de que éstas nunca puedan revisarse. La apelación en éstos casos es un remedio infructuoso e incluso quimérico. Basta con considerar el ejemplo de una parte que, luego de que el abogado o bufete que lo representaba fue descalificado, consigue una nueva representación legal y logra una decisión favorable en su caso. Esta parte no tendrá interés de presentar un recurso de apelación lo que conllevaría el efecto real de que la descalificación se convirtió en inapelable, aun cuando se retrasó la solución del caso y el trámite resultó encarecido. Por su parte, el abogado descalificado no puede esperar por una apelación para plantear como error su descalificación pues ya no estará involucrado en el litigio al momento de la apelación.

No hay duda que la mencionada situación conllevaría un daño irreparable para el abogado cuya descalificación era improcedente en derecho y quien no tuvo la oportunidad de recurrir a una revisión de esta determinación. El no permitir una revisión interlocutoria menoscaba el derecho

de ese abogado a prestar servicios remunerados en un caso y podría ocasionar un fracaso a la justicia, ya que no será revisable.

Analizadas las repercusiones que pudiera ocasionar el no reconocer el derecho de una parte a revisar las órdenes de descalificaciones, resolvemos que éstas son revisables de acuerdo con la Regla 52.1 ya que "esperar a una apelación constituiría un fracaso irremediable a la justicia". Regla 52.1 de las Reglas de Procedimiento Civil de 2009, *supra*.

En el caso de autos el Tribunal de Apelaciones determinó que carecía de jurisdicción para atender el recurso de *certiorari* debido a que concluyó que las mociones de descalificación no se encuentran contenidas en las excepciones que la Regla 52.1, *supra*, establecen para atender estos recursos. Al así proceder, el foro apelativo intermedio erró. El Tribunal de Apelaciones tenía jurisdicción para revisar la descalificación ordenada por el Tribunal de Primera Instancia mediante la cual dicho foro descalificó al licenciado Muñoz Vissepó y al bufete Munet Law como representantes legales de Econo en el caso de epígrafe, conforme a la Regla 52.1 de las Reglas de Procedimiento Civil, *supra*.

Por otra parte, el foro apelativo intermedio expresó que hubiera denegado de igual forma el recurso por considerar que el foro primario está en mejor posición para determinar la descalificación de abogados. Erró del mismo modo al así razonar.

Es cierto que hemos expresado que la determinación de derecho del tribunal de instancia de descalificar a un abogado es una decisión impregnada de un alto grado de discreción que tiene dicho foro en el manejo procesal de un caso. Meléndez v. Caribbean Int'l. News, *supra*, pág. 664. Véanse además, Lluch v. España Service Sta., 117 D.P.R. 729, 745 (1986); Valencia, *Ex parte*, 116 D.P.R. 909, 913 (1986). Sin embargo, dicha discreción no es óbice para que los foros apelativos revisen estas determinaciones debido a las consecuencias reales que pueden tener las mismas. Los tribunales apelativos estamos llamados a revisar la decisión sobre la descalificación si se demuestra que hubo un craso abuso de discreción, que el foro primario actuó con prejuicio o parcialidad, que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitará un perjuicio sustancial. Zorniak Air Servs. v. Cessna Aircraft Co., 132 D.P.R. 170, 181 (1992); Lluch v. España Service Sta., *supra*.

Recordemos que cuando un tribunal carece de jurisdicción para atender un recurso solo procede su desestimación. No obstante lo anterior y ante las expresiones del foro apelativo intermedio, debemos recalcar que la función revisora no se limita a determinar cuál foro está en mejor posición para determinar una u otra cosa. Ello constituye una norma de deferencia que no releva al foro apelativo de su función de evaluar el curso decisorio llevado a cabo conforme a lo aquí expresado.

IV

Por los fundamentos antes expuestos, revocamos la resolución emitida por el Tribunal de Apelaciones. Por haber errado al declararse sin jurisdicción, devolvemos el caso al mencionado foro para la continuación de los procedimientos de acuerdo con lo antes expuesto.

Se dictará sentencia de conformidad.


                                    Luis F. Estrella Martínez
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Job Connection Center Inc.

    Recurrido

          v.

                              CC-2011-740    Certiorari

Supermercados Econo Inc.

    Peticionario

 Departamento de la Familia

    Tercero demandado

SENTENCIA

San Juan, Puerto Rico, a 14 de mayo de 2012.

      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la resolución emitida por el Tribunal de Apelaciones. Por haber errado al declararse sin jurisdicción, se devuelve el caso al mencionado foro para la continuación de los procedimientos de acuerdo con lo antes expuesto.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo